# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **TINA PARKER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No.: 5:13-CV-1683-VEH** |
| ) | |
| **CAROLYN W. COLVIN, ACTING** ) | |
| **COMMISSIONER, SOCIAL** ) | |
| **SECURITY ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

Plaintiff Tina Parker ("Parker") brings this action pursuant to Title XVI of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Supplemental Security Income ("SSI").[1] Ms. Parker timely pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

review under 42 U.S.C. § 405(g) and § 1383(c)(3).² For the following reasons, the court **AFFIRMS** the Commissioner's decision.

## FACTUAL AND PROCEDURAL HISTORY

On July 20, 2010, plaintiff Parker filed applications for disability, disability insurance, and Supplemental Security Income (SSI) benefits. These claims were denied on November 10, 2010. She then filed a request for a hearing, which was held before Administrative Law Judge Lori Williams ("the ALJ") on May 24, 2012. The ALJ denied the claim July 3, 3012, on the grounds that Parker was not disabled. On August 10, 2013, the Appeals Council (AC) denied her request for review.

Parker was thirty-nine years old when the ALJ denied her claim in July, 2012. Parker completed the eleventh grade and has past work experience as a sewing machine operator, chicken catcher, short-order cook home health aide, treater of wooden poles, and laborer. (Tr. 89-90, 219, 229). She alleged a period of disability beginning on May 25, 2010, due to high blood pressure, swelling feet, diabetes, arm numbness, bipolar disorder, fibromyalgia, asthma, and usage of arms. (Tr. 228).

After considering Parker's medical evidence on record, her testimony at the

---

² 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

hearing, and the testimony of a vocational expert (tr. 88-96), the ALJ found:

(1)    Parker met the insured status requirements of the Social Security Act through September 30, 2010. (Tr. 37).

(2)    She had not engaged in substantial gainful activity since May 25, 2010, the alleged onset date. (*Id.*).

(3)    Parker had several severe impairments: obesity, hypertension, a history of bronchitis/ asthma, and a depressive disorder not otherwise specified with anxiety (20 C.F.R. 404.1520(c) and 416.920(c). Parker also had "multiple non-severe impairments and not medically determinable conditions as defined within the meaning of the Regulations." (*Id.*).

(4)    Parker did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 40).

(5)    She had the residual functional capacity to: occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry up to ten pounds; stand and/or walk, in combination, with normal breaks for at least six hours during an eight-hour workday and sit, with normal breaks, for up to eight hours during an eight-hour workday; frequently climb ramps and stairs but never ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to extreme heat, wetness, humidity, and working in areas of vibration; concentrated exposure to pulmonary irritants; and all exposure to industrial hazards. She could perform simple routine tasks requiring no more than short simple instructions and simple work-related decision making with few workplace changes. She could have frequent interactions with coworkers and supervisors and only occasional interactions with the general public. (Tr. 41).

(6)    Parker was capable of performing past relevant work as a sewing machine operator. This work does not require the performance of work-related activities precluded by Parker's residual functional capacity. (Tr. 47).

(7)    Parker had not been under a disability, as defined in the Social Security Act, from May 25, 2010, through the date of the decision (July 3, 2012). (*Id.*).

In making her findings on Parker's residual functional capacity, the ALJ found that Parker's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Tr. 42). However, she stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the objective medical evidence of record, the findings of the consultative examiners, and the [] residual function capacity assessment." *Id.*

Following an apparently unfinished sentence — "Specifically, the objective medical evidence of record does not indicate the claimant" — the ALJ wrote in the subsequent paragraph,

> The claimant has a history of prior claims which have been decided unfavorably at the administrative law judge level and upheld at the Appeals Council and U.S. District Court levels. Specifically the claimant had a 2006 claim decided unfavorably by an administrative law judge which was subsequently upheld by the Appeals Council and by U.S. District Court. She filed a new application in 2008 just days after that administrative law judge denial, and that claim was decided unfavorably by an administrative law judge and subsequently upheld by the Appeals Council (Exhibits 5A, 6A). The claimant did not exhaust the appeals process on that claim but rather filed a new application. On the applications, the claimant has repeatedly alleged disability beginning on the day after previous unfavorable decisions, which the undersigned finds is not a realistic onset date which is otherwise corroborated by the objective medical evidence of record. This history of repeated applications along with the claimant's very poor medical record substantiating her subjective allegations and poor earnings record does not serve to bolster her credibility.

(Tr. 42-43). The ALJ then went on to discuss Parker's lack of efforts to seek medical

4

care until nearly two years after the filing of the application, the results of her examinations by physicians, and her other medical records (Tr. 43-46) before reaching the conclusion that Parker's testimony was not credible as to "the degree of pain and functional limitations alleged." (Tr. 46).

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the

court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## **STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I-v). The Commissioner must determine in sequence:

> (1) whether the claimant is currently employed;
> (2) whether the claimant has a severe impairment;
> (3) whether the claimant's impairment meets or equals an impairment listed by the Commissioner;
> (4) whether the claimant can perform his or her past work; and
> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## **DISCUSSION**

In this case, Parker is not disputing whether there was substantial evidence in

the record for the Commissioner's decision.[4] (Doc. 11 at 14). Rather, Parker objects to the ALJ's determination on the grounds that the ALJ was biased and urges the court to remand her case for a new hearing before a different ALJ. According to Parker, the ALJ improperly discredited her testimony on the basis of her previous unsuccessful applications for disability benefits. (Doc. 11 at 13).

According to the Eleventh Circuit,

> If a claimant testifies as to his subjective complaints of disabling pain and other symptoms . . . the ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms. Although this circuit does not require an explicit finding as to credibility, ... the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court] to conclude that [the ALJ] considered her medical condition as a whole.

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citations and quotation marks omitted).

The Social Security Act "contemplates that disability hearings will be individualized determinations based on evidence adduced at a hearing." *Heckler v. Campbell*, 461 U.S. 458, 467 (1983). A claimant is entitled to a hearing that is both full and fair. *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981). The regulations

---

[4] Although Parker did not make the argument that there was not substantial evidence in the record for the Commissioner's decision, the court has reviewed the record and finds that substantial evidence supports the Commissioner's decision.

governing Title II dictate that "[a]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (referring to 20 C.F.R. § 404.940). However, there is a presumption that administrative adjudicators are unbiased, and so the burden of establishing a disqualifying bias or prejudice is on the party making that assertion. *See Schweiker v. McClure*, 456 U.S. 188, 195-196 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

The Supreme Court has described the analysis to determine whether a judge was biased:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555 (1994). *Liteky*, then, stands for the proposition that a bias challenge is supported <u>either</u> (1) if the judge had formed an opinion of the case based on facts introduced or events occurring outside of the proceedings or of prior proceedings (an "extrajudicial source") <u>or</u> (2) if the judge displayed an attitude towards the plaintiff so extreme "as to make fair judgment

9

impossible." *Id.*

In *Miles*, the Eleventh Circuit remanded the plaintiff's Social Security disability claim for a new hearing before another ALJ on the grounds of bias in the first ALJ's determination. 84 F.3d at 1401. The ALJ's bias lay in her reasons for discrediting medical records from two physicians who had examined the plaintiff. Of one, the ALJ wrote in her decision, "[his] examinations for [the plaintiff's attorney] almost invariably [emphasis added] conclude that the person being examined is totally disabled." *Id.* at 1399. Of the second, Dr. Shehi, the ALJ stated, "[a]lthough the assessment by Dr. L. Edward Shehi, Jr., who examined the claimant at the request of [the plaintiff's attorney], not unexpectedly [emphasis added] found marked impairments in all categories due to major depression, the assessment from the treating physicians and the [Commissioner's] consulting psychologist indicated a much less severe impairment." *Id.* at 1401, n. 7. These statements by the ALJ were not supported by any evidence in the record, compromising the process of adjudication, and so the claimant was "entitled to a reconsideration of her application for benefits before a different ALJ." *Id.* at 1401.

The court finds persuasive a case decided in this district earlier this year, *Morales-Parris v. Colvin*, 2014 WL 2003115 (N.D. Ala. May 15, 2014), which

concerned very similar facts.[5] There the court considered an allegation that the ALJ was unlawfully biased in discrediting the plaintiff's testimony "based on things [plaintiff] said or did during the period relating to her prior claim (for Social Security disability benefits)." *Id.* at *6. Specifically, the plaintiff alleged that during the hearing the ALJ showed an "obsession" with the prior claim, repeatedly asking questions about that claim. *Id.* The court, however, found that the *Liteky* requirements for demonstrating judicial bias were not satisfied. Since all the facts relating to the plaintiff's prior claim had been introduced into the record for the hearing before the ALJ, there was no support for a bias challenge on the extrajudicial source theory. *Id.* at *7. Likewise, the evidence did not display a high degree of antagonism on the part of the ALJ that would have "prevent[ed] him from making a fair judgment on her claim." *Id.*

Furthermore, the *Morales-Parris* court saw the ALJ's conduct as positively suggesting a lack of bias. The ALJ gave the claimant "every opportunity to present all her evidence" during the hearing. *Id.* He fulfilled his duty to develop a full and fair record by inquiring about gaps in the medical record, ordered an additional examination, and gave the claimant thirty more days to provide additional records. *Id.*

---

[5] Somewhat surprisingly, neither party has brought *Morales-Parris* to the court's attention, despite the factual similarities and the appearance of the same attorneys.

Finally, the ALJ's extensive discussion in his decision of the medical evidence suggested that he had based his decision on the evidence on record. *Id*. at *8.

In the present case, the plaintiff alleges an indication of bias in the paragraph[6] of the ALJ's findings that discussed Parker's previous, unsuccessful claims and concluded that they did "not serve to bolster her credibility." (Doc. 11 at 13-14). Parker contends that an ALJ is not permitted to "consider previous adverse decisions in prior disability claims filed by the defendant in determining a claimant's credibility in a current case." (*Id.* at 14). She argues that in this case, "the ALJ's determination regarding the claimant <u>relied</u> precisely on the claimant's prior unsuccessful claims which were not relevant to the present case." (*Id.* at 16).

Parker exaggerates the significance of the prior adversely decided claims to the ALJ's ruling when she says that the ALJ "relied" on them to discredit her testimony. (*Id.*). The court agrees with the defendant's characterization of the paragraph at issue in the ALJ's findings: "The ALJ seems to be citing to the prior applications to help explain Plaintiff's selection of an alleged onset date.[7] However, [following this

---

[6] Given in full, *supra*, at p. 4 of this memorandum.

[7] There is some difficulty in determining the context of this paragraph, because the preceding paragraph ends with an unfinished sentence. However, the following paragraph goes on to discuss how the plaintiff did not seek any medical care until nearly two years after the alleged start of her disability, suggesting that the ALJ was skeptical of Parker's pattern of making new claims of disability

paragraph] the ALJ properly noted that the objective evidence does not support the alleged onset date she selected." (Doc. 12 at 11). Indeed, the paragraph at issue was only a small part of a six-page section explaining the ALJ's findings on the plaintiff's residual functional capacity, the vast majority of which discussed the medical evidence relating to the period of alleged disability.

The court will consider whether Parker has proven bias in the ALJ using the analysis mandated by the Supreme Court in *Litesky*. The court first notes that the ALJ's knowledge of Parker's prior, unsuccessful claims came from evidence on record. (Tr. 42 (citing those claims as "Exhibits 5A, 6A")). This shows that the ALJ was not relying on an extrajudicial source, and so, under *Liteky*, Parker must prove that the ALJ had "such a high degree of favoritism or antagonism as to make fair judgment impossible." 510 U.S. at 555. This is a high bar that has not been met in this case.

The relevant portions of the Regulations direct the ALJ to consider "<u>all</u> of the available evidence" when "evaluating the intensity and persistence of [the claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence ...."). There is no provision in federal law prohibiting an ALJ from considering evidence related to prior

---

immediately following a previous denial.

claims. Indeed, Parker's complaint argued only that is that there is no law stating that the ALJ may consider prior decisions (doc. 11 at 14), but such absence does not constitute a prohibition. As discussed *supra*, the ALJ's use of evidence from Parker's previous claims was limited to a discussion of the credibility of the onset date she claimed in this case, and so it does not indicate any bias on the part of the ALJ.

A review of the hearing transcript and the ALJ's written decision shows that the ALJ developed a full and fair record and gave Parker every chance to submit evidence. The ALJ also granted Parker's attorney an additional business day to file medical records that had not been sent to the agency at the time of the hearing. (Tr. 46, 60). At the hearing, the ALJ inquired about Parker's treatments, her medical history, and her current capacities. No part of the transcript or the written decision reveals any hint of hostility or prejudice towards Parker.

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the Commissioner's decision is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the court will affirm the decision by separate order.

**DONE** and **ORDERED** this the 23rd day of October, 2014.

                                                */s/ Virginia Emerson Hopkins*

**VIRGINIA EMERSON HOPKINS**
United States District Judge